In re Lawrence KASSOVER
SSN: 068–24–4219.

No. 01 Civ. 0003(NRB).

United States District Court,
S.D. New York.

April 25, 2001.

Patrick J. Murphy, Murphy & O'Connell, New York City, for appellant.

Linda C. Jamieson, Claude D. Montgomery, Phillips, Lytle, Hitchcock, Baine & Huber, L.L.P., New York City, for appellee.

## OPINION & ORDER

BUCHWALD, District Judge.

Appellant Patricia Meehan Kassover ("appellant" or "Mrs. Kassover") appeals pursuant to Rule 8009 of the Federal Rules of Bankruptcy Procedure, from a bankruptcy court order dated October 3, 2000. In that order, the bankruptcy court granted Trustee R. Peyton Gibson's (the "Trustee")[1] objection and thereby disallowed the portion of Mrs. Kassover's claim that related to the proceeds of the sale of certain properties (the "TIC properties") to which Mrs. Kassover claimed ownership. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. For the reasons stated below, Mrs. Kassover's appeal is denied and the case is dismissed.

### *BACKGROUND*

Mrs. Kassover and the Debtor were married in 1990. At that time, the Debtor was involved in an arbitration proceeding between fellow shareholders of The Garden City Company ("the Company"), a family-owned entity. The plaintiff in that arbitration, Phillip Kassover, alleged that various officers and directors had breached their fiduciary duties, breached the Shareholders Agreement and mismanaged the Company.

In October 1993, the arbitration panel issued an award ("1993 Award") finding the Debtor liable to the Company in the amount of $839,023.61, as well as to other shareholders in varying amounts. The 1993 Award prohibited any shareholder who did not satisfy his or her obligation to the Company from receiving dividends or serving as an officer or director of the Company. The Debtor failed to fulfill his award obligation and lost both his director and senior officer positions at the Company. In response, the Debtor nominated Mrs. Kassover to serve as director of the Max Kassover Group pursuant to the Shareholders Agreement, and Mrs. Kassover nominated herself to the family's senior officer position.

In a mid 1995 special state court proceeding to confirm the arbitration, the Company obtained an order restraining the Debtor from transferring or conveying any of his assets. In a separate March 1997 proceeding, the state court entered an order and partial judgment ("1997 Order") that voided all of the Debtor's conveyances of the "TIC Properties" to his son, daughter, and daughter-in-law and prohibited the Debtor from transferring any part of his interest in the properties over which Mrs. Kassover claims ownership.

During this time, Mrs. Kassover's marriage to the Debtor deteriorated[2] and on August 6, 1997, the two entered into a Separation Agreement that was so-ordered by the state court on August 10, 1997. The Separation Agreement provided for the Debtor's transfer to Mrs. Kassover of "all of his right, title, and interest in and to" three of the TIC Properties. Separation Agreement, Ex. A, ¶ 4.3(a). The Debtor also agreed to transfer to Mrs. Kassover all of his right, title and interest in a fourth TIC property, in satisfaction of a money judgment against the Debtor that Mrs. Kassover had satisfied and her loss of income as an officer of the Company. *Id.* at 4.4.

---

1. The Trustee was the former Chapter 11 trustee for Lawrence Kassover's ("the Debtor") estate and now is the liquidating trustee under a confirmed plan of liquidation.

2. The Debtor filed for divorce from Mrs. Kassover in Florida in December 1995. Mrs. Kassover initiated divorce proceedings against the Debtor in New York in January 1996. The Florida action was ultimately stayed for the New York action.

In the Separation Agreement, Mrs. Kassover also expressly acknowledged the existence and effect of the 1997 Order prohibiting the Debtor from transferring any of the TIC Properties, which included those conveyed to Mrs. Kassover in the Separation Agreement. Paragraph 4.5 of the Separation Agreement provided:

The HUSBAND represents that he has been restrained from conveying the properties referred to in Paragraphs 4.3a and 4.4d herein by Order and partial Judgment of the Hon. Carol H. Arber dated March 21, 1997, in a matter known as The Garden City Company, Inc. v. Lawrence Kassover, Jean Kassover, Rosalie Erickson, et al. pending in the Supreme Court of the State of New York, County of New York, bearing Index # 121763/95, a copy of which is annexed hereto and made a part hereof as Exhibit "C". The HUSBAND shall cooperate in all respects with the WIFE to obtain a lifting of that restraint and any other restraints on his transferring to the WIFE his right, title, and interest in and to those properties.

In October 1997, Mrs. Kassover sought a state court order permitting the Debtor to transfer the four TIC properties to her pursuant to the Separation Agreement. A judicial hearing officer declined her request, citing the continuing effectiveness of the state court's 1997 Order. Mrs. Kassover did not seek review of that determination.

On May 1, 1998, the Debtor filed for Chapter 11 bankruptcy. On August 31, 1998, Mrs. Kassover filed a proof of claim asserting an unsecured priority claim in the amount of $36,000, representing unpaid rent on a co-operative apartment rented to the Debtor pursuant to the Separation Agreement, and unliquidated "marital claims" of an unspecified nature.

On September 15, 1998, Mrs. Kassover moved to strike the four TIC properties from the Debtor's schedule of Assets. On October 2, 1998, both the Company and the Trustee filed objections to Mrs. Kassover's motion. At an October 22, 1998 hearing, the bankruptcy court denied Mrs. Kassover's motion from the bench. Mrs. Kassover did not seek reconsideration of the bankruptcy court's decision, nor did she appeal it.

This cycle continued—(1) the Trustee proposing an action implicating the TIC properties at issue, (2) Mrs. Kassover objecting that the properties were hers and improperly included in the Chapter 11 proceeding, (3) and the bankruptcy court denying Mrs. Kassover's objection on the ground that the issue had been decided and her claim was meritless. On October 15, 1999, the Trustee filed a motion for the bankruptcy court's approval of bidding and notice procedures for an auction of the majority of the TIC properties, including the four properties in which Mrs. Kassover claimed ownership. On October 22, 1999, Mrs. Kassover filed an Objection to Part of the Trustee's Contract of Sale of the Tenants–in–Common Properties. She again asserted that she was the rightful owner of the Debtor's one-quarter interest in the four properties by virtue of their conveyance to her in the Separation Agreement. Once again, the bankruptcy court denied her Objection.

On November 26, 1999, the Trustee filed a Notice of Intent to Sell Real Property and a Motion for an Order Approving Sale of Certain Tenant–in–Common Properties. The motion was filed both in the Debtor's Chapter 11 case and the adversary proceeding entitled *Estate of Max Kassover v. Lawrence Kassover, et al.*, Adv. Pro. No. 99–8023A, brought against the Debtor, the remaining tenants in common, and others having recorded interests in or liens on the

TIC properties. The Estate of Max Kassover sought a judgment declaring its mortgage liens against the Debtor's interests in the properties to have priority over all other liens, a sale of the TIC properties pursuant to Section 363(b) and (h) of the Bankruptcy Code, and satisfaction of the Debtor's obligations to it out of the sale proceeds. The Trustee served certified notice on Mrs. Kassover in both the Chapter 11 case and the adversarial proceeding and Mrs. Kassover filed an objection to the Sale Motion on December 16, 1999, based on the same theory as her October 22, 1999 objection. The bankruptcy court heard the Sale Motion on December 22, 1999. At the end of the hearing, the court entered an order finding that the Debtor was one of the nine tenants in common who collectively owned the properties being sold and that the Debtor owned "an undivided twenty-five percent (25%) interest in each of the TIC Properties, and said interests are property of the the Debtor's estate within the meaning of the Bankruptcy Code section 541(a)." Appellee's Supplemental Appendix ("App."), 1.97, ¶¶ V–VI. The court also found that Mrs. Kassover was not among the other eight tenants in common. The Sale Order was docketed on January 3, 2000. On February 2, 2000, Mrs. Kassover filed a Motion to Extend Time to File Notice of Appeal from the Sale Order, citing her *pro se* status, lack of notice and unfamiliarity with the time limits for appeals. At a February 15, 2000 hearing on the motion, the court recognized that it had ruled against Mrs. Kassover on her claim that the properties

had been conveyed to her prior to the initiation of the Chapter 11 proceeding, and that she had failed to appeal. App. 44 ll.14–25; App. 46, l.24—App. 47, l.8. The bankruptcy court denied the motion on the grounds that Mrs. Kassover had failed to request a stay pending appeal despite her awareness of and participation in the proceedings and had failed to establish excusable neglect. App. 50 l.21—App. 51, l.22.

On March 31, 2000, Trustee filed a disclosure statement regarding the plan of reorganization for the Debtor's estate. On April 21, 2000, Mrs. Kassover objected and demanded separation of proceeds from the properties in which she claimed ownership. Following court approval of the Trustee's plan, Mrs. Kassover filed Objections to Approval of Trustee's Amended Disclosure Statement and Plan of Reorganization, restating her theory that the TIC properties had been conveyed to her. One June 9, 2000, she filed another objection to the Trustee's plan on, *inter alia*, the grounds raised in her May 11, 2000 objection.

Following a June 14, 2000 hearing, the bankruptcy court confirmed the Trustee's First Amended Plan of Reorganization. App. 30. At the confirmation hearing, Mrs. Kassover agreed to withdraw her objection to confirmation, subject to (1) reservation of any state law marital right she might have in the Max Kassover Estate, and (2) the Trustee's waiver of the right to object to Mrs. Kassover's Class 2 claim of $380, 383.[3] App. 66, l.15—App.

---

**3.** Counsel for Mrs. Kassover dismisses as "baseless" Trustee's assertion that Mrs. Kassover withdrew her objections in exchange for the consideration stated above and asserts that even "[a] cursory reading of the transcript of the hearing ... fails miserably to sustain this outrageous reach." Appellant's Reply Brief at 5. However, before making such claims, counsel should review the transcript lest the Court do so and learn that it is appellant counsel's argument that is an "outrageous reach." When the court asked Mrs. Kassover whether she agreed to the terms described above, she stated "Yes, I agree." App. 67, l.10. The court then ruled, "The objection is marked withdrawn", leaving no ambiguity as to the consequence of Mrs. Kassover's assent.

67, 1.12. She did not appeal the confirmation.

Nevertheless, on July 13, 2000, Mrs. Kassover returned to court once again to file an Objection to Order confirming Chapter 11 Trustee's First Amended Plan of Reorganization. The theory underlying her proof of claim was the same one she had asserted in her August 31, 1998 proof of claim—namely, that the properties had been rightfully transferred to her and, therefore, were not properly Assets within the Chapter 11 proceeding. App. 371, 372. The Trustee objected to Mrs. Kassover's new proof of claim and Mrs. Kassover replied to the objection. Following arguments of counsel on October 3, 2000, the bankruptcy court ruled:

> COURT: I have already made it clear, counselor, that I read all the papers. I am familiar with the arguments. And as I said, they had all been raised under several different constructs previously in this case.
>
> The bottom line is that the injunction remained in place as of the time the the Debtor filed the Chapter 11 Petition. There was no transfer, effective transfer of the the Debtor's interest in any of the properties, which became part of the the Debtor's Estate upon the filing of Chapter 11. That has not changed. And I find that the objection to Mrs. Kassover's claim, this particular claim, not the one which has been previously been honored, is sustained. I don't find any merit to the current argument, which does not plow any new ground. The injunction was there at the time of the transfer of the properties.

App. 86, 1.14—App. 87, 1.7. The court entered an order that day, consistent with this conclusion. Mrs. Kassover now appeals therefrom.

## STANDARD OF REVIEW

 "[I]n bankruptcy cases, the district court sits as an appellate court." *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir.1995). A bankruptcy court's factual determinations in a core matter are binding unless they are clearly erroneous and its legal determinations are reviewable *de novo*. See *O'Connor v. Pan Am Corp.*, 5 Fed. Appx. 48, 50, 2001 WL 246056, *2 (2d Cir. March 2, 2001) (*citing In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988–89 (2d Cir. 1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991)).

## DISCUSSION

Mrs. Kassover raises two arguments on appeal. First, she contends that the Trustee's failure to challenge in an adversary proceeding Mrs. Kassover's claim of ownership to the Debtor's interests in the four TIC properties renders invalid the Trustee's actions vis-a-vis those properties. Second, she contends that the bankruptcy court never had subject matter jurisdiction over the TIC properties at issue and, therefore, that the court's orders respecting those properties are invalid. Both arguments are baseless.

 At no point during her repetitious objections to various proposed actions by the Trustee did Mrs. Kassover object that the Trustee's actions were invalid because the Trustee had failed to challenge Mrs. Kassover's ownership claims in an adversarial proceeding, or appeal from a ruling in any manner that could be construed as preserving the issue. Where a bankruptcy appellant has failed to raise and preserve an objection during bankruptcy proceedings, she cannot raise it on appeal. See *In re Blackwood Associates, L.P.*, 153 F.3d 61, 67 (2d Cir.1998). *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 29 (2d Cir.1996). Because the issue is

waived, we will not analyze it here. However, we note that in any event, we find that it has no merit.

■ Mrs. Kassover also alleges that because the four TIC properties had been conveyed to her prior to the Chapter 11 proceeding, the bankruptcy court never had subject matter jurisdiction over them and, accordingly, its actions regarding these properties are invalid. Putting aside the issue of whether she can raise a subject matter jurisdiction challenge at this point, it is obvious that Mrs. Kassover's counsel fundamentally misapprehends the meaning of subject matter jurisdiction. Clearly he confuses it with some concept of *in rem* jurisdiction, although his precise theory is not entirely clear. The correctness of a bankruptcy court's decisions concerning what assets are properly in a Chapter 11 the Debtor's estate may properly be the subject of debate and appeal. That the bankruptcy court has subject matter jurisdiction to make these decisions may not. The Bankruptcy Code makes crystal clear that a bankruptcy court shall decide which assets comprise the Debtor's estate. *See* 28 U.S.C. § 157(b)(2); *In re Drexel Burnham Lambert Group Inc.*, 120 B.R. 724, 739 (Bankr.S.D.N.Y.1990). The proper route for Mrs. Kassover would have been to appeal from the bankruptcy court's denials of her objections, a course she did not pursue.[4]

■ Furthermore, even if we were to review Mrs. Kassover's claim on the merits, it appears to us that the bankruptcy court's repeated denials of Mrs. Kassover's objections decisions were correct. Mrs. Kassover plainly acknowledged in the Separation Agreement that the Debtor was forbidden by court order from conveying the TIC properties to her. Prior to the Debtor's Chapter 11 filing, a state court refused to permit the Debtor to transfer his interests in the TIC properties to Mrs. Kassover, citing the continuing effectiveness of the court's 1997 Order forbidding transfer. That order remained in place when the Debtor went into bankruptcy. Thus, the bankruptcy court was correct in ruling that Mrs. Kassover had not been legally conveyed the TIC properties at the time of the bankruptcy proceeding.

### *CONCLUSION*

For the foregoing reasons, appellant's appeal is hereby denied and the case is closed.

**IT IS SO ORDERED.**

---

4. We also note Mrs. Kassover's failure to pursue state remedies for her claims during this time. Had she truly believed that the bankruptcy court lacked subject matter jurisdiction, one would imagine that she would have appealed the state court's October 1997 denial of her action to permit transfer of the Debtor's interests in the TIC properties pursuant to the Separation Agreement, or have commenced some other proceeding in state court. However, she did not.