**AMERICAN CIVIL LIBERTIES UNION, et al., Plaintiffs,**

v.

**DEPARTMENT OF DEFENSE, et al., Defendants.**

**No. 04 CIV.4151 AKH.**

United States District Court, S.D. New York.

Oct. 31, 2005.

As Amended Nov. 2, 2005.

Lawrence S. Lustberg, Demetrios Christos Batsides, Jennifer Ching, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Plaintiffs.

Heather Kirsten McShain, Peter M. Skinner, Sean H. Lane, U.S. Attorney's Office, David Brian Smallman, DLA Piper Rudnick Gray Cary US LLP, New York, NY, Charles G. Mills, Glen Cove, NY, for Defendants.

## *ORDER DENYING MOTION FOR PARTIAL RECONSIDERATION*

HELLERSTEIN, District Judge.

The government moves for reconsideration of part of my Opinion and Order of September 29, 2005, that ordering Defendant Central Intelligence Agency ("CIA") to respond to Item 1 of plaintiff's priority list of requested documents. The government's motion asserts that I overlooked its argument why the CIA should be permitted neither to admit nor deny that it has possession of the particular document that Plaintiff requested. I believe, however, that I considered all material aspects of the government's argument, and I therefore deny its motion for reconsideration.

On a motion for reconsideration, the movant must demonstrate the existence of a "matter[ ] or controlling decision" that the court originally overlooked. *See* Local Civil Rule 6.3. The movant must present matters that might be rea-

sonably expected to "'alter the result before the court.'" *Cioce v. County of Westchester,* 128 Fed.Appx. 181, 185 (2d Cir. 2005) (quoting *In re BDC 56 LLC,* 330 F.3d 111, 123 (2d Cir.2003)); *O'Connor v. Pan Am Corp.,* 5 Fed.Appx. 48, 52 (2d Cir.2001) (citing *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995)). Reconsideration should be granted where necessary to correct for "clear error" or to "prevent manifest injustice." *Munafo v. Metro. Transp. Auth.,* 381 F.3d 99, 105 (2d Cir.2004). A motion for reconsideration is not an opportunity to reargue that which was previously decided. *Shrader,* 70 F.3d at 257.

Item 1 of Plaintiff's priority list asked the government to produce a "[m]emorandum from DOJ to CIA interpreting the Convention Against Torture." In its motion for reconsideration, the government argues that the request should be understood in the context of Plaintiff's original and broader request, for documents concerning the "treatment of Detainees in United States custody," the "Death of Detainees in United States custody," and the "rendition of Detainees and other individuals" to countries known to employ torture. The implication, according to the government, is that an admission by the CIA as to the existence of the DOJ memorandum necessarily discloses that the CIA was engaged in questioning "Detainees," for otherwise why would it have received a memorandum from DOJ interpreting the Convention; that such a memorandum would express legal opinions, for otherwise why would DOJ be issuing such a memorandum; and that such a memorandum containing legal opinions presumably would disclose what methods of interrogation would be lawful, and would not be lawful, if they were to be applied by CIA interrogators. Conversely, if the CIA were to deny that it possessed such a memorandum, it would thereby deny that

it was involved in questioning Detainees. From this set of alternative speculative hypotheses, the government argues that a substantive answer by the CIA would disclose its "intelligence sources and methods" in covert and clandestine activities in violation of the National Security Act of 1947, 50 U.S.C. § 403–3(c)(7).

I considered these arguments of the government in preparing my Opinion and Order of September 29, 2005, and I did not accept them. I addressed the government's arguments at pages 23 and 24, and 25 through 28 of my Opinion and Order, following a lengthy discussion of applicable cases and of the arguments made by the government in those cases. I referenced the representations and arguments in the several declarations by Marilyn A. Dorn, including her Fifth Declaration, which the government again proffers under seal and Top Secret classification. There is nothing new or different in the government's papers in support of its motion for reconsideration.

The Convention Against Torture is part of our law. *See* United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85; 18 U.S.C. §§ 2340, 2340A (2000); *see also* 8 C.F.R. §§ 208.18, 1208.18 (2005). It was ratified by its national signatories and implemented into U.S. law in order to "make more effective the struggle against torture and other cruel, inhuman, or degrading treatment or punishment throughout the world." Richard P. Shafer, Annotation, *Construction and Application of United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment, or Punishment,* 2003 WL 277074, 184 ALR Fed. 385 (2005). The Convention requires that each state take measures to prevent acts of torture in its

jurisdiction and prohibits any state from expelling a person to another state where there are grounds for believing that s/he would be subjected to torture. *Id.*

Clearly any member of the U.S. government involved in interrogations would need to know and understand the Convention's terms, including official administrative interpretations of those terms. The Office of the Attorney General of the DOJ is empowered to furnish advice and opinions on legal matters to government agencies, 28 C.F.R. § 0.5 (2005), and has issued public memoranda interpreting the Convention Against Torture, *see, e.g., Daniel* Levin, Assistant Attorney General, Office of Legal Counsel, Dep't of Justice, *Legal Standards Applicable Under 18 U.S.C. §§ 2340–2340A,* Dec. 30, 2004, available at http://www.usdoj.gov/olc/18usc23402340a2 .htm.

The fact that such a memorandum might be addressed to the CIA tells us nothing of the "intelligence sources and methods" utilized by the CIA, if and to the extent that it might be involved in questioning persons detained in Iraq and Afghanistan or anywhere else. Indeed, the press has reported frequently about CIA involvement in the interrogation of Detainees, and confirming or denying the existence of a legal memorandum interpreting the Convention Against Torture adds nothing to, and detracts nothing from, the public understanding. Nor does it tell us anything about whether or not the CIA is engaged in covert or clandestine activities.

I further observe, as applied in the following paragraph, that the National Security Act recognizes CIA engagement in covert activities, providing for their authorization by the President, 50 U.S.C. § 413b(a), and for their report by the CIA to congressional intelligence committees, id. § 413b(b). The Act further specifies that "acquir[ing] intelligence" is not a "covert" activity. Id. § 413b(e)(1).

The Dorn Declarations, without describing the DOJ memorandum or making any representation as to its alleged existence— a memorandum which I have not seen, nor do I know to exist—argue that a substantive answer by the CIA, or even a claim of exemption, would disclose "covert or clandestine activities and interests," Fourth Dorn Declaration at 10, thereby breaching a security classification. But these speculations are not grounded in the memorandum, or whether or not such a memorandum exists. The DOJ, lacking authority to authorize the CIA to engage in such activities, would not address such a topic in a memorandum interpreting a convention. Nothing implicit in the documents gives rise to the speculations contained in the Dorn Declarations. If the concerns expressed in the Dorn Declarations are real, they arise not from the terms of plaintiff's request, but from the contents of the particular documents that presumably might be located, and such concerns can be addressed by *in camera* proceedings and appropriate exemptions under FOIA, exactly the way such concerns are customarily addressed.

As I held in my Opinion and Order of September 29, 2005, the CIA, no less than any other governmental agency, is not exempted from responding to a FOIA request, unless it shows that an answer will give away a classified secret. *See also Am. Civil Liberties Union v. Dep't of Def.,* 351 F.Supp.2d 265 (S.D.N.Y. 2005) (Opinion and Order of February 2, 2005, modified, April 18, 2005). In its motion for partial reconsideration, the government essentially seeks to reargue that which I decided. *See Shrader,* 70 F.3d at 257. Accordingly, the motion is denied.

The government asks for an enlargement of time, beyond the thirty three days

already given, within which to consider whether to file an appeal or to comply with the Opinion and Order of September 29, 2005. As I previously discussed, time is of the essence in a FOIA case. *Am. Civil Liberties Union v. Dep't of Def.*, 339 F.Supp.2d 501, 505 (S.D.N.Y.2004) (Opinion and Order of September 15, 2004) (citing *Ettlinger v. FBI*, 596 F.Supp. 867, 879 (D.Mass.1984)). In my discretion, I grant one further enlargement to the government, to November 15, 2005.

SO ORDERED.